USCA1 Opinion

 

 _________________________
No. 91-1451 SAMUEL MESNICK, Plaintiff, Appellant, v. GENERAL ELECTRIC COMPANY, Defendant, Appellee. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Rya W. Zobel, U.S. District Judge] _________________________ Before Selya, Circuit Judge, Coffin, Senior Circuit Judge, and Cyr, Circuit Judge. _________________________ Scott A. Lathrop with whom Scott A. Lathrop, P.C. was on brief
for appellant. David H. Erichsen with whom Susan M. Curtin and Hale and Dorr
were on brief for appellee. _________________________ __________________________ SELYA, Circuit Judge. This appeal calls upon us, in the
course of determining whether an employer transgressed the law in its
dealings with a former employee, to map the much traveled but little
understood intersection between Rule 56 of the Civil Rules and the
burden-shifting framework for discrimination cases first crafted by
the Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). For the reasons that follow, we affirm the entry of summary judgment
in the employer's favor.
I. BACKGROUND Recognizing the dictates of Fed. R. Civ. P. 56(c), we scan
the record in the light most congenial to the summary judgment loser
and draw all reasonable inferences to his benefit. In 1974, Radio Corporation of America (RCA) hired
plaintiff-appellant Samuel Mesnick, a lawyer by training, to work as
a senior contracts administrator at its plant in Burlington,
Massachusetts. Mesnick was then fifty-one years of age. He was
promoted several times, eventually becoming manager of contracts
administration. In 1986, defendant-appellee General Electric Company
(GE) purchased RCA's business and installed new management at the
Burlington facility. Achilles Georgiou became director of finance,
and thus, Mesnick's immediate superior. Georgiou discussed Mesnick's
job performance with Mesnick's former supervisors, receiving mixed
reviews. Georgiou was told good things about Mesnick's technical
competence. He was also told, however, that Mesnick had at times
shown himself to be a vulgar, bigoted, sexist lout who insulted
subordinates, offended clients, drank to excess during lunch, and so
forth. On March 7, 1987, Georgiou wrote his initial evaluation of
Mesnick's performance. It was largely negative. In closing,
Georgiou suggested that Mesnick ought to "pursue a private career of
a federal procurement consultant." Instead of the $4,000 raise that
he had anticipated, Mesnick received a $2,000 raise. Later on, a meeting was held in which Mesnick complained
to Georgiou about unfair treatment in these matters. At the same
time, the men discussed an expected reorganization of the contracts
department (the Department). As part of this reorganization, GE
planned to instate a supervisory position, the holder of which would
be in charge of departmental operations at both Burlington and GE's
facility in Huntsville, Alabama. The new position entailed many of
the plaintiff's previous responsibilities. Mesnick expressed an
interest in finding out more about the job, although he voiced some
reservations about the involvement of "the hanging judge" þ an
apparent reference to Georgiou þ in the selection process. Following this unfruitful meeting, Mesnick attempted to go
over Georgiou's head. On April 23, 1987, he sent a memorandum to
Salvatore Capodici, the Burlington plant's top executive. In the
memorandum, Mesnick remonstrated, generally, about Georgiou's
leadership of the Department; complained, specifically, about
Sherman's advance knowledge of the new position, see supra note 2;
and raised the boggart of possible age discrimination. Mesnick's
criticism of Georgiou continued in a series of memoranda to, and
conversations with, Capodici, and in sundry communications with
subordinates. Among other things, he produced and presented for
Capodici's edification a slide show belittling Georgiou's performance
and capabilities. He also circulated notes to fellow employees
exploring the idea of jumping ship and joining a rival company. Mesnick never applied for the position as manager of the
Department. On December 14, 1987, after a national search, GE named
Steve Tubbs, age forty-two, to the vacancy. Mesnick was assigned to
a different office and given the title of "manager, special
projects." His salary and benefits were unscathed, but his new post
was under Tubbs and lacked supervisory power over other employees. Left as an emperor without an empire, Mesnick fired off a letter to
Capodici explicitly criticizing Georgiou's integrity, professional
honesty, and competence. From that point forward, the situation plunged downhill. On one occasion, upset with Capodici, Mesnick boldly directed
profanity at him. On another occasion, Mesnick received a warning
from Georgiou in respect to attendance problems. On January 21,
1988, Mesnick filed charges with the Equal Employment Opportunity
Commission (EEOC) alleging that GE violated the Age Discrimination in
Employment Act (ADEA), 29 U.S.C. 621-634 (1988), and its
Massachusetts analogue, Mass. Gen. L. ch. 151B (1990), by failing to
promote him and, instead, hiring Tubbs. GE learned of the charges on
January 26, 1988. That February, Mesnick and his superiors tangled regarding
a self-evaluation form that GE asked Mesnick to complete. He
adamantly refused, claiming that he was under no obligation to fill
out the form. Over the next four months, a bad situation grew
steadily worse. Mesnick sent a flurry of memoranda to his superiors
roasting Tubbs and Georgiou. These communiques culminated in a
missive to Capodici, dated June 22, which requested a formal
performance evaluation, excoriated Georgiou's "professional
ignorance," and denigrated Tubbs' professional stature. On July 18,
1988, Capodici informed Mesnick that he considered the missive
tantamount to "gross insubordination," warned him that his "insubor-
dinate behavior" was "totally unacceptable," and stated that any
recurrence would constitute "cause for immediate dismissal." On the same day, despite his enduring failure to complete
the self-evaluation form, Mesnick received a performance evaluation
from Tubbs. Tubbs rated Mesnick's overall performance "marginally
acceptable." While acknowledging Mesnick's "extensive contractual
technical experience," Tubbs stated that these talents were "negated
by his lack of interpersonal skills/confrontational attitude,
contentiousness, disregard for management direction and policy, and
inability/unwillingness to fulfill managerial grade expectations." Mesnick received no merit increase for 1988. Moreover, he was
relocated to a smaller office, away from the Department. Undaunted, Mesnick responded by filing a 20.10 concern in
which he branded Tubbs' handling of Mesnick's unauthorized absences
as derelict and suggested that Tubbs be fired. After an
investigation, Tubbs was exonerated. On September 7, 1988, Mesnick
circulated yet another billet-doux. In it he renewed his attack on
Tubbs, attempted to rebut the recent (unfavorable) performance
evaluation, and alleged that his superiors were retaliating against
him because he had preferred discrimination charges. Nine days
later, the ax fell: GE terminated Mesnick's troubled tenure on
grounds of insubordination and failure to work harmoniously with
others. The plaintiff promptly filed another complaint with the
EEOC. After the EEOC determined that both complaints were meritless,
this suit was instituted.
II. THE SUMMARY JUDGMENT STANDARD In civil procedure, summary judgment's role is "to pierce
the pleadings and to assess the proof in order to see whether there
is a genuine need for trial." Garside v. Osco Drug, Inc., 895 F.2d
46, 50 (1st Cir. 1990) (citation omitted); see also Celotex Corp. v.
Catrett, 477 U.S. 317, 323-24 (1986). Since appellate review of a
grant of summary judgment is plenary, the court of appeals, like the
district court, "must view the entire record in the light most
hospitable to the party opposing summary judgment, indulging all
reasonable inferences in that party's favor." Griggs-Ryan v. Smith,
904 F.2d 112, 115 (1st Cir. 1990). An appellate panel is not
restricted to the district court's reasoning but can affirm a summary
judgment on any independently sufficient ground. Garside, 895 F.2d
at 48-49. In the end, the entry of summary judgment can be upheld
only if "the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show that
there is no genuine issue as to any material fact and that the moving
party is entitled to a judgment as a matter of law." Fed. R. Civ. P.
56(c). The Rule 56 pavane has a distinctive set of steps. When
requesting summary judgment, the moving party "must put the ball in
play, averring 'an absence of evidence to support the nonmoving
party's case.'" Garside, 895 F.2d at 48 (quoting Celotex, 477 U.S.
at 325). The nonmovant must then document some factual disagreement
sufficient to deflect brevis disposition. Not every discrepancy in
the proof is enough to forestall a properly supported motion for
summary judgment; the disagreement must relate to some genuine issue
of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
247-48 (1986); Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5,
8 (1st Cir. 1990). Genuine issues of material fact are not the stuff
of an opposing party's dreams. On issues where the nonmovant bears
the ultimate burden of proof, he must present definite, competent
evidence to rebut the motion. See Anderson, 477 U.S. at 256-57;
Garside, 895 F.2d at 48. This evidence "cannot be conjectural or
problematic; it must have substance in the sense that it limns
differing versions of the truth which a factfinder must resolve at an
ensuing trial." Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181
(1st Cir. 1989); see also Anderson, 477 U.S. at 249-50 (evidence that
"is merely colorable or is not significantly probative" cannot deter
summary judgment) (citation omitted). Over time, summary judgment has proven its usefulness as
a means of avoiding full-dress trials in unwinnable cases, thereby
freeing courts to utilize scarce judicial resources in more
beneficial ways. Hence, while courts should apply the controlling
standards carefully in all cases þ and especially in cases that
present difficult issues of proof þ summary judgment can be
appropriately entered even where elusive concepts such as motive or
intent are involved. See, e.g., Medina-Munoz, 896 F.2d at 8.
III. THE DISCRIMINATION CLAIM We consider, first, the claim of discrimination. Although
the plaintiff tries to balkanize this claim into several segments þ
he contends, inter alia, that GE violated the ADEA by evaluating his
work performance in an unfairly negative fashion, cutting his slated
salary increase, impeding his ability to apply for the position of
contracts manager, hiring a younger person for that position, failing
to promote him, demoting him, and terminating him þ and the district
court analyzed it in that fragmented fashion, see Mesnick v. General
Elec. Co., 1991 WL 61481, 55 Fair Empl. Prac. Cas. (BNA) 1291, 57
Empl. Prac. Dec. (CCH) 40,992 (D. Mass. Apr. 15, 1991), we believe
that Mesnick's discrimination case must rise or fall on whether he
offered sufficient facts to show that he was wrongfully discharged by
reason of his age. A. The plaintiff in an ADEA discrimination suit bears the
ultimate "burden of proving that his years were the determinative
factor in his discharge, that is, that he would not have been fired
but for his age." Freeman v. Package Machinery Co., 865 F.2d 1331,
1335 (1st Cir. 1988); see also Texas Dep't of Community Affairs v.
Burdine, 450 U.S. 248, 253 (1981). When, as here, the plaintiff
produces no direct evidence of age discrimination, his case is
governed in the first instance by the burden-shifting framework of
McDonnell Douglas Corp. v. Green, 411 U.S. at 802-05. See Medina-
Munoz, 896 F.2d at 8; Loeb v. Textron, Inc., 600 F.2d 1003, 1010 (1st
Cir. 1979). It is the judge's province to determine if the
respective parties have adduced sufficient evidence to satisfy these
burdens. Dea v. Look, 810 F.2d 12, 16 (1st Cir. 1987). The framework is by now a familiar one. The plaintiff
must initially make a prima facie showing of discrimination. McDonnell Douglas, 411 U.S. at 802; Medina-Munoz, 896 F.2d at 8. The
burden of making out a prima facie case is "not onerous." Burdine,
450 U.S. at 253; see also Villanueva v. Wellesley College, 930 F.2d
124, 127 (1st Cir.) (the prima facie showing is "quite easy to
meet"), cert. denied, 112 S. Ct. 181 (1991). In an age
discrimination case, this requires a demonstration that (i) the
plaintiff was over the age of forty, (ii) his work was sufficient to
meet his employer's legitimate expectations, (iii) his employer took
adverse action against him, and (iv) the employer sought a
replacement with roughly equivalent job qualifications, thus
revealing a continued need for the same services and skills. See,
e.g., Hebert v. Mohawk Rubber Co., 872 F.2d 1104, 1110 (1st Cir.
1989); Menzel v. Western Auto Supply Co., 848 F.2d 327, 328 (1st Cir.
1988). This showing gives rise to an inference that the employer
discriminated due to the plaintiff's advanced years. See Freeman,
865 F.2d at 1335. The next burden þ articulating a legitimate,
nondiscriminatory reason for the adverse employment decision þ
belongs to the defendant. See Hebert, 872 F.2d at 1111; Menzel, 848
F.2d at 328. This entails only a burden of production, not a burden
of persuasion; the task of proving discrimination remains the
claimant's at all times. See Burdine, 450 U.S. at 253, 256; Medina-
Munoz, 896 F.2d at 9. Once such a reason emerges, the inference
raised by the prima facie case dissolves, Medina-Munoz, 896 F.2d at
9; Freeman, 865 F.2d at 1336, and the last transfer of burdens
occurs. At the final stage, the plaintiff is required to show,
unassisted by the original inference of discrimination, that the
employer's proffered reason is actually a pretext for discrimination
of the type alleged. See Furnco Constr. Corp. v. Waters, 438 U.S.
567, 578 (1978); McDonnell Douglas, 411 U.S. at 805; Villanueva, 930
F.2d at 127-28; Medina-Munoz, 896 F.2d at 9; Dea, 810 F.2d at 15-16. In assessing pretext, a court's "focus must be on the perception of
the decisionmaker," that is, whether the employer believed its stated
reason to be credible. Gray v. New England Tel. and Tel. Co., 792
F.2d 251, 256 (1st Cir. 1986). It is not enough for a plaintiff
merely to impugn the veracity of the employer's justification; he
must "elucidate specific facts which would enable a jury to find that
the reason given is not only a sham, but a sham intended to cover up
the employer's real motive: age discrimination." Medina-Munoz, 896
F.2d at 9; see also Furnco, 438 U.S. at 578; Villanueva, 930 F.2d at
127-28. Because the resultant burden can be carried without direct
proof of discrimination, requiring the plaintiff to show that the
employer's reason is a pretext for age discrimination comports with
the principle that a plaintiff should not be required to produce
"smoking-gun" evidence before prevailing in a discrimination suit. There are many veins of circumstantial evidence that may be mined by
a plaintiff to this end. These include, but are by no means limited
to, statistical evidence showing disparate treatment by the employer
of members of the protected class, see, e.g., Olivera v. Nestle
Puerto Rico, Inc., 922 F.2d 43, 49 (1st Cir. 1990), comments by
decisionmakers which denigrate those over forty, see, e.g., Siegel v.
Alpha Wire Corp., 894 F.2d 50, 55 (3d Cir.), cert. denied, 110 S. Ct.
2588 (1990), the incidence of differential treatment in the
workplace, see, e.g., McDonnell Douglas, 411 U.S. at 804-05, and the
deployment of younger replacements, see, e.g., Hebert, 872 F.2d at
1115. Above all, courts will look at evidence of discrimination not
in splendid isolation, but as part of an aggregate package of proof
offered by the plaintiff. Olivera, 922 F.2d at 50. It is important to remain mindful that, when the summary
judgment record is complete, the jurisprudence of Rule 56 takes hold
and the McDonnell Douglas burden-shifting framework must comport with
the rule. See MacDonald v. Eastern Wyo. Mental Health Ctr., 941 F.2d
1115, 1122-23 (10th Cir. 1991) (Seth, J., writing separately). If
the plaintiff has failed to limn a prima facie case, the inference of
discrimination never arises, and the employer's motion for summary
judgment will be granted. See, e.g., Menard v. First Sec. Servs.
Corp., 848 F.2d 281, 285-87 (1st Cir. 1988). If the plaintiff has
made out his prima facie case, and the employer has not offered a
legitimate, nondiscriminatory reason to justify the adverse
employment action, then the inference of discrimination created by
the prima case persists, and the employer's attempt to secure summary
judgment should be rebuffed. See, e.g., Burdine, 450 U.S. at 254;
Furnco, 438 U.S. at 577. When the struggle has progressed to the
third and final phase of burden-shifting, however, then the McDonnell
Douglas framework falls by the wayside. Because this phenomenon is
much misunderstood, we pause briefly to explicate it. It is settled that the presumption arising from a
discrimination plaintiff's prima facie case vanishes once the
employer has articulated a legitimate, nondiscriminatory reason for
dismissing the employee. See Medina-Munoz, 896 F.2d at 9; Freeman,
865 F.2d at 1336; Menard, 848 F.2d at 287. At that juncture, the
ultimate question becomes whether, on all the evidence of record, a
rational factfinder could conclude that age was a determining factor
in the employer's decision. See United States Postal Serv. Bd. of
Govs. v. Aikens, 460 U.S. 711, 716 (1983). That is to say, so long
as the employer's proffered reason is facially adequate to constitute
a legitimate, nondiscriminatory justification for the employer's
actions, the trial court's focus in deciding a Rule 56 motion must be
on the ultimate question, not on the artificial striations of the
burden-shifting framework. Put another way, under conventional summary judgment
practice, a plaintiff must establish at least a genuine issue of
material fact on every element essential to his case in chief. Celotex, 477 U.S. at 323. Hence, in a case where the first two steps
of the McDonnell Douglas pavane have been satisfactorily
choreographed, a plaintiff must offer some minimally sufficient
evidence, direct or indirect, both of pretext and of the employer's
discriminatory animus to prevail in the face of a properly drawn Rule
56 motion. Once the burden-shifting framework has run its course, we
think that courts should not unduly complicate matters, whether on
summary judgment or on motion for directed verdict at trial's end,
"by applying legal rules which were devised to govern 'the basic
allocation of burdens and order of proof' in deciding this ultimate
question." Aikens, 460 U.S. at 716 (quoting Burdine, 450 U.S. at
252) (citation omitted). It is against this backdrop that we move to the
particulars of Mesnick's discrimination claim. We realize, as we do
so, that the quantum of evidence a plaintiff must produce to survive
a directed verdict at trial, and thus, the quantum necessary to
survive a pretrial Rule 56 motion, is not susceptible to formulaic
quantification. The determination must be made case by case, in
light of the principles undergirding summary judgment, the
evidentiary record, and the substantive rules of law applicable in a
given instance. B. The district court ruled that there was no significantly
probative evidence that GE's stated reason for its actions þ
Mesnick's insubordination and inimicality þ masked a discriminatory
animus based on Mesnick's age. The plaintiff concedes that this
reason, if authentic, would legitimize an adverse employment
decision. But, he claims to have adduced proof of both pretext and
discriminatory animus, thereby sidestepping summary judgment. We
agree in part, for Mesnick created a triable issue of fact anent
pretext vel non. We disagree, however, as to the second half of the
equation. Like the court below, we are unable to find in this record
enough evidence of age discrimination to withstand brevis
disposition. That ends the matter. The "ADEA does not stop a
company from discharging an employee for any reason (fair or unfair)
or for no reason, so long as the decision to fire does not stem from
the person's age." Freeman, 865 F.2d at 1341. Courts may not sit as
super personnel departments, assessing the merits þ or even the
rationality þ of employers' nondiscriminatory business decisions. See Furnco, 438 U.S. at 578; Petitti v. New England Tel. & Tel. Co.,
909 F.2d 28, 31 (1st Cir. 1990); Loeb, 600 F.2d at 1012 n.6. To be sure, Mesnick flooded the nisi prius roll with
plethoric evidence designed to illustrate his professional competence
and ability to work well with others þ but the vast majority of
Mesnick's evidence related to pretext vel non. Regardless of its
bulk, this evidence had nothing at all to do with age or with the
employer's true motives. On that score, Mesnick offered only two
isolated tidbits purporting to indicate GE's discriminatory animus. Viewed singly or in combination, these fragments would not allow a
rational jury to find that GE had a hidden, age-oriented agenda. The first piece of evidence comprises a comment attributed
to Georgiou, on the occasion of Sherman's departure, that he was "sad
to lose the youth of the work force." Words of praise for youth þ
Sherman was in his thirties þ do not, by themselves, indicate a bias
against more mature workers. See, e.g., Shager v. Upjohn Co., 913
F.2d 398, 400-02 (7th Cir. 1990) (superior's mention that "[i]t is
refreshing to work with a young man with . . . a wonderful outlook on
life and on his job" was not probative of age discrimination);
Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438-39 (9th Cir. 1990)
(summary judgment for employer affirmed in ADEA case despite
supervisor's comment that he chose plaintiff's replacement because
the latter was "a bright, intelligent, knowledgeable young man"); see
also Medina-Munoz, 896 F.2d at 9-10. While there may be situations
in which to laud the young is impliedly to depreciate the old,
Shager, 913 F.2d at 402-03, Georgiou's remark to Sherman cannot
plausibly support an inference of age discrimination in GE's dealings
with Mesnick. The second piece of evidence upon which Mesnick fastens is
no more rugged. He points to the fact that, when an outside search
firm retained by GE reported on potential recruits for the manager's
position, it not only furnished the company a roster of candidates,
but also listed their ages. Yet, despite ample time for discovery,
Mesnick offered no evidence that GE directed the search firm to
memorialize applicants' ages or that the company had reason to
suspect that the search firm's report, when submitted, would contain
such data. Whatever the search firm's reason for collecting ages,
the intentions of a third party may not be attributed to an employer
without some rational basis for attribution. See La Montagne v.
American Convenience Prods., Inc., 750 F.2d 1405, 1412 (7th Cir.
1984); cf. Medina-Munoz, 896 F.2d at 10 (the biases of one other than
the decisionmaker are not ordinarily probative in a discrimination
suit). Since there is no basis for attribution here þ no evidence,
say, that GE requested, or was desirous of receiving, age-related
information þ the fact that the search firm supplied the applicants'
ages does not increase or decrease the likelihood that GE discrim-
inated against the plaintiff because of his years. To sum up, the district court was under no obligation to
draw unreasonably speculative inferences in mulling whether the
plaintiff fulfilled his burden of adducing "specific facts showing
that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Inasmuch as the summary judgment record contained no evidence from
which a rational jury could infer, without the most tenuous
insinuation, that GE's legitimate, nondiscriminatory reason for
cashiering Mesnick was actually a pretext for age discrimination, the
district court did not err in defenestrating the plaintiff's claim. See Celotex, 477 U.S. at 323 ("[A] complete failure of proof
concerning an essential element of the nonmoving party's case
necessarily renders all other facts immaterial.").
IV. THE RETALIATION CLAIM Our journey through the record is still incomplete. In
addition to claiming that GE discriminated against him by reason of
his age, the plaintiff also alleged that GE retaliated against him
because he dared to exercise ADEA-related rights. We turn, then, to
the question of whether Mesnick presented sufficient evidence to
evade summary judgment on his retaliation claim. A. The ADEA provides in pertinent part: It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.
29 U.S.C. 623(d). Absent direct evidence, the McDonnell Douglas
burden-shifting framework remains the option of choice in retaliation
cases, albeit with slight modifications. Under the applicable model,
the plaintiff must make a prima facie showing that (i) he engaged in
ADEA-protected conduct, (ii) he was thereafter subjected to an
adverse employment action, and (iii) a causal connection existed
between the protected conduct and the adverse action. See Connell v.
Bank of Boston, 924 F.2d 1169, 1179 (1st Cir.), cert. denied, 111 S.
Ct. 2828 (1991); Petitti, 909 F.2d at 33. The fact that a plaintiff
eventually proves unable to establish that the employer violated the
ADEA in the first instance is not fatal to his prima facie case of
retaliation. It is enough that the plaintiff had a reasonable, good-
faith belief that a violation occurred; that he acted on it; that the
employer knew of the plaintiff's conduct; and that the employer
lashed out in consequence of it. See Petitti, 909 F.2d at 33;
Manoharan v. Columbia Univ. College of Physicians & Surgeons, 842
F.2d 590, 593 (2d Cir. 1988). Once a prima facie case is delineated, the burden shifts
to the defendant to articulate a legitimate, nondiscriminatory reason
for its employment decision. See McNairn v. Sullivan, 929 F.2d 974,
980 (4th Cir. 1991); Petitti, 909 F.2d at 34. If this is
accomplished, the ultimate burden falls on the plaintiff to show that
the employer's proffered reason is a pretext masking retaliation for
the employee's opposition to a practice cast into doubt by the ADEA. See Dominic v. Consolidated Edison Co., 822 F.2d 1249, 1254 (2d Cir.
1987); see also EEOC v. Hacienda Hotel, 881 F.2d 1504, 1514 (9th Cir.
1989) (Title VII retaliation case); Williams v. Cerberonics, Inc.,
871 F.2d 452, 457 (4th Cir. 1989) (same). As in the discrimination
context proper, courts confronted by summary judgment motions must at
this point focus on the ultimate question, scrapping the burden-
shifting framework in favor of considering the evidence as a whole. See supra pp. 12-14; see also Cerberonics, 871 F.2d at 458 (in
determining whether it is appropriate to take a retaliation case from
the jury, a reviewing court's focus must be on "the evidence as a
whole"). Thus, the critical inquiry becomes whether the aggregate
evidence of pretext and retaliatory animus suffices to make out a
jury question. There are many sources of circumstantial evidence that,
theoretically, can demonstrate retaliation in a way sufficient to
leap the summary judgment or directed verdict hurdles. These
include, but are not limited to, evidence of differential treatment
in the workplace, see, e.g., Sumner v. United States Postal Serv.,
899 F.2d 203, 210 (2d Cir. 1990); Dominic, 822 F.2d at 1254-55,
statistical evidence showing disparate treatment, see, e.g.,
McDonnell Douglas, 411 U.S. at 805, temporal proximity of an
employee's protected activity to an employer's adverse action, see,
e.g., Rowlett v. Anheuser-Busch, Inc., 832 F.2d 194, 202 (1st Cir.
1987); Sumner, 899 F.2d at 209, and comments by the employer which
intimate a retaliatory mindset. Whatever the sources of his proof,
a plaintiff, in order to survive judgment as a matter of law, must
present evidence from which a reasonable jury could infer that the
employer retaliated against him for engaging in ADEA-protected
activity. Petitti, 909 F.2d at 33; Cerberonics, 871 F.2d at 458. B. If we assume, arguendo, that the plaintiff established a
prima facie case of retaliation, then, given the defendant's forceful
articulation of a legitimate, nondiscriminatory reason justifying its
actions, see supra Part III(B), the case boils down to what we have
termed the ultimate question: did Mesnick present sufficient
evidence that GE's stated reason was a pretext for retaliation? We
think the answer to this query is in the negative. Here, the very chronology of the case militates against a
finding that Mesnick's evidence was sufficiently robust to thwart
brevis disposition. His first complaint of age discrimination was
made informally in a memorandum he sent to Capodici on April 23,
1987. Almost nine months later, he filed charges with the EEOC. Not
only is this a long gestation period, during which Mesnick's
employment remained substantially intact, but GE also offered
evidence of insubordination and inimicality that antedated either of
these events. Moreover, after Mesnick first enlisted the EEOC, he
remained in GE's employ for another nine months, more or less, before
he was finally fired (and then, only after committing a particularly
provocative act in outright defiance of an unmistakably aposematic
admonition). We think the sequence of events in this case suggests
the absence of a causal connection between the statutorily protected
conduct and the adverse employment action, not the converse. Cf.,
e.g., Oliver v. Digital Equipment Corp., 846 F.2d 103, 110-11 (1st
Cir. 1988) (long period of delay between initial EEOC complaint and
ultimate discharge negates inference of retaliation). In addition to this lack of temporal coincidence, we can
find no other competent evidence of retaliation. Mesnick's proof
related exclusively to whether business decisions made by the company
in its efforts to deal with an employee it perceived as insubordinate
were, or were not, plausible. He tendered nothing, direct or
circumstantial, suggesting a retaliatory animus. To the contrary,
the record, read as a whole, is more consistent with an employer's
longstanding desire to improve an employee's behavior than with some
sort of vengeful preoccupation. We can, after all, safely conclude,
on the basis of undisputed facts, that GE for many months endured
conduct on Mesnick's part which was much more antagonistic and
disruptive than his eventual resort to the EEOC. To be sure, GE knew, at the time Mesnick was dismissed,
that he was pursuing an age discrimination claim. But, that kind of
knowledge on an employer's part, without more, cannot itself be
sufficient to take a retaliation case to the jury. Were the rule
otherwise, then a disgruntled employee, no matter how poor his
performance or how contemptuous his attitude toward his supervisors,
could effectively inhibit a well-deserved discharge by merely filing,
or threatening to file, a discrimination complaint. We agree with
the Eighth Circuit that, while statutes such as the ADEA bar
retaliation for exercising rights guaranteed by law, they do "not
clothe the complainant with immunity for past and present
inadequacies, unsatisfactory performance, and uncivil conduct in
dealing with subordinates and with his peers." Jackson v. St. Joseph
State Hosp., 840 F.2d 1387, 1391 (8th Cir.) (Title VII case), cert.
denied, 488 U.S. 892 (1988). In the absence of proof sufficient to
create a jury issue regarding retaliation, courts should not use
cases involving unsupported reprisal claims to police the wisdom,
fairness, or even the rationality of an employer's business
judgments. Because we do not believe a reasonable jury could find in
the plaintiff's favor on the issue of retaliatory animus, summary
judgment was proper.
V. CONCLUSION We need go no further. The plaintiff's failure to adduce
evidence supporting an inference of discriminatory or retaliatory
motive was, as the district court perspicaciously discerned, fatal to his case in its several permutations. The defendant's motion
for summary judgment was, therefore, appropriately granted.
Affirmed.