**Edward FITCH, Plaintiff,**

v.

**R.J. REYNOLDS TOBACCO CO., Defendant.**

**No. 86 CV 5830 (RJD).**

United States District Court, S.D. New York.

Dec. 16, 1987.

Emmet, Marvin & Martin, New York City, for plaintiff.

Vedder, Price, Kaufman, Kamholz & Day, New York City, for defendant.

## MEMORANDUM OF DECISION & ORDER

DARONCO, District Judge.

Plaintiff, a black male, brought this action against his former employer, R.J. Reynolds Tobacco Co. ("RJR"). Plaintiff claims his employment was involuntarily terminated because of race and in retaliation for having filed an earlier charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). For the same reasons of race and retaliation, he further alleges he was subjected to impermissible disparate treatment. 42 U.S.C. § 1981 (the Civil Rights Act of 1866); 42 U.S.C. §§ 2000e *et seq.* ("Title VII" of the Civil Rights Act of 1964). Defendant has moved for summary judgment on all claims alleged in the Amended Complaint, while the plaintiff has moved for summary judgment only as to the disparate treatment claim based on race. Fed.R.Civ.P. 56(c).

### Background

Plaintiff, Edward Fitch, was hired by the defendant in 1973 as a sales representative in the North Bronx (New York) Sales Division (later renamed the Bronx Sales Division). In 1975, he became an area sales representative in the North Bronx Sales

Division and worked in various sales territories within that Division. The plaintiff made sales calls to retail outlets of RJR's tobacco products on an assigned frequency. His duties were to sell the company's products and to service the display and advertising of those products. For each retail account he called upon, the plaintiff completed and submitted a sales call report form, which contained the names and addresses of the accounts called upon, the date of the sales call, and a summary of what occurred during the sales call. Periodically, the Division Manager or Assistant Division Manager independently verified the accuracy of the information reported in the sales call reports.

In October 1983, Albert Perez, the Division Manager of Bronx Sales Division, told the plaintiff he was being considered for a transfer to the Harlem sales territory. Perez allegedly believed a Hispanic female was not suitable for that territory, but that a black male would be. Subsequently, Fitch filed a charge of discrimination with the EEOC, alleging the proposed transfer was unlawfully based upon his race and sex. Within a week, however, the charge was voluntarily withdrawn and the transfer to the Harlem sales territory was effectuated in October 1983.

In April 1984, Perez, who was aware that Fitch had filed and then withdrawn a charge of discrimination with the EEOC, gave Fitch the lowest overall performance evaluation he had ever received during his employment at RJR.

In May 1984, Fitch was transferred to the South Bronx territory of the Bronx Sales Division. In August 1984, the plaintiff's supervisors were Albert Perez, Division Manager, and Thomas Caraccio, Assistant Division Manager. One of their duties was to monitor the sales and area sales representatives under their supervision. Specifically, they would make the same sales calls, as reported by the sales and area sales representatives, in order to verify the calls had been made and to review the accomplishments reported for each sales call.

On August 23, 1984, Perez asked Fitch to give him copies of his sales call reports for August 21 and 22, 1984. Upon receipt of these reports, Perez and Caraccio began the verification process. Fitch reported he visited 14 accounts on August 21; Perez and Caraccio checked 11 of the accounts and concluded he had not visited 5 of them. Fitch reported he visited 15 accounts on August 22; 14 were checked, and Perez and Caraccio concluded not one of the 14 had, in fact, been visited as Fitch claimed.

Perez and Caraccio met together with Fitch on August 24, 1984. They advised him of their findings and their conclusion that he had falsified the sales call reports for the days of August 21 and 22, 1984. The events of August 21, 22, 23 and 24, 1984 are summarized in the Field Sales Discipline Report, signed by Perez and bearing the notation, "Mr. Fitch refused to sign." There is an additional notation that "upon review with Mr. Fitch, he has admitted that the ... findings are correct." Def. Exh. 6. Plaintiff Fitch now denies falsifying the records, but for purposes of his Motion for summary judgment on the disparate treatment due to race claim, accepts as true RJR's claim that he falsified the sales call reports.

The Policies and Procedures Manual (the "Manual") of RJR contains the company's disciplinary policies. The Manual provides that all disciplinary actions must be conducted consistently, impartially, and promptly. It specifically mandates the immediate and automatic termination of anyone who falsifies any part of or all of two or more day's work. Pursuant to this policy, Fitch was terminated, effective immediately.

Following the plaintiff's termination, his Record of Employment form was marked to indicate involuntary termination for a rule violation; he did not participate on a pro-rated basis in the semi-annual bonus distributed under the Sales Incentive Bonus Plan for the period July 1, 1984, until his termination on August 24, 1984, although he had received his six month distribution in July 1984 for the period January

1—June 30, 1984; and, he was replaced by a female Hispanic.

Additionally, plaintiff Fitch applied for unemployment insurance benefits. Initially, the unemployment insurance board determined Fitch had been terminated for cause (falsifying the sales call reports) and, consequently, denied unemployment benefits. On November 29, 1984, that determination was overruled by an Administrative Law Judge who, after a hearing, held that there was no evidence to support the allegations of falsifying the sales call reports. On May 31, 1985, the Unemployment Insurance Appeal Board upheld the decision.

Plaintiff's allegations of disparate treatment due to race arise from the circumstances surrounding the termination of another RJR area sales representative, Frank Haughton. On April 20, 1984, Frank Haughton, a white male, when confronted, admitted falsifying sales call reports for five days. Perez advised Haughton that he would be terminated pursuant to the company's policy of automatic and immediate termination for such violation. Haughton was 56 years old and had 28 full years of service with RJR and, therefore, was eligible to receive early retirement benefits (age 55 with at least 20 years of service).

Haughton requested that he be allowed to apply for early retirement and, in view of his tenure with RJR, his request was granted. But, he was advised that if he did not apply for early retirement, he would be terminated for falsifying the sales call reports. Def. Exh. 9. On May 12, 1984, Haughton applied for early retirement benefits. Pursuant to company procedure, the date on which he was first entitled to early retirement benefits was June 1, 1984. Haughton was, accordingly, removed from the payroll on May 31, 1984.

Following Haughton's termination, his Record of Employment form was marked to indicate voluntary termination; he received his share of the semi-annual Sales Incentive Bonus Plan for the period April 20 through May 31, 1984, the period after the admission of falsification and during which his request for early retirement was being processed; and, he remained on the payroll from the time of his admission until his departure on May 31, 1984.

On December 4, 1984, plaintiff Fitch filed a charge of retaliatory discrimination with the EEOC. On June 12, 1985, the charge was amended to include an additional claim of disparate treatment. On May 19, 1986, Fitch received a Notice of Right to Sue Letter from the EEOC. The instant action was subsequently commenced.

### Discussion

The Court of Appeals for this Circuit has held that summary judgment is available in employment discrimination suits, despite the presence of issues of intent. "(I)f the mere incantation of intent" could operate as a talisman to defeat an otherwise valid motion for summary judgment, the summary judgment rule "would be rendered sterile." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985). Summary judgment will be granted when there is no genuine issue of material fact, Fed.R.Civ.P. 56(c), and "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 273 (1986). To defeat a Motion for summary judgment, however, the non-moving party must present "concrete particulars" and cannot succeed with purely conclusory allegations of discrimination. *Meiri*, 759 F.2d 989.

To succeed in a § 1981 action, the plaintiff must prove he was a victim of purposeful or intentional discrimination. *General Building Contractors Assoc. v. Pennsylvania*, 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). Similarly, to succeed in a Title VII action, the plaintiff must prove a discriminatory motive. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Motive may be established either by direct evidence or by inference pursuant to the three steps set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Initially, the plaintiff must merely raise an inference of discrimination in order to make out a *prima facie* case of employment discrimination. The Supreme Court has observed that the facts will vary in Title VII cases, and the proof required to make out a *prima facie* case is not necessarily the same from case to case. *McDonnell*, 411 U.S. 792, n. 13, 93 S.Ct. 1817, 36 L.Ed.2d 668. The plaintiff's burden at the *prima facie* stage, however, is not intended to be rigid or ritualistic; rather, it is *de minimis*. *Meiri*, 759 F.2d 989, 996, n. 10.

If the plaintiff successfully raises an inference of discrimination, the burden then shifts to the defendant employer to rebut that inference. The inference of discrimination may be rebutted by an articulation of a legitimate, non-discriminatory reason for the challenged employment actions. If the defendant overcomes the plaintiff's *prima facie* case of discrimination, the burden shifts back to the plaintiff to demonstrate that the articulated reason was a mere pretext for discrimination.

Disparate Treatment. To make out a *prima facie* case of discriminatory disparate treatment, the plaintiff must show not only that he is a member of a protected class and was subjected to adverse employment actions, but also that a similarly situated, unprotected person was treated differently than the plaintiff. *See International Brotherhood of Teamsters v. United States*, 431 U.S. at 334–35, 97 S.Ct. at 1854; *Martin v. Chrysler Corp.*, 10 F.E.P. Cases 329, 332 (E.D.Mich.1974).

In the instant case, the plaintiff alleges he was treated differently than a similarly situated Caucasian male (Haughton). Fitch claims he was involuntarily and immediately terminated from his employment for (allegedly) falsifying sales call records, and that he was denied his pro-rata share of the semi-annual sales bonus. The plaintiff claims that for the same offense, Haughton was not immediately terminated. Rather, Haughton was allowed to exercise his right to early retirement; he remained on the payroll while his request for early retirement was being processed; and, Haughton received his share of the semi-annual sales

bonus even after he admitted falsifying the sales call records.

The defendant counters that Haughton was not a similarly situated white male. Like Fitch, Haughton's employment was to be terminated against his will. Haughton, however, was entitled to elect early retirement, having attained the requisite age and years of service. Fitch, at the time of his termination, was 42 years old and had 10 years of service and, therefore, was ineligible to receive early retirement benefits.

Further, the defendant asserts that Haughton remained on the payroll for six weeks after he chose to elect early retirement due to the administration of the Retirement Plan. Pursuant to the Retirement Plan's procedures, retirement commences on the first day of the calendar month (June 1) following receipt by the Retirement Board of the formal application for early retirement, here on or after May 12.

The defendant also argues that Fitch and Haughton are not similarly situated with respect to the Sales Incentive Bonus Plan. To receive the mid-year or year-end bonus, the sales representative must be on the payroll as of June 30 and December 31, respectively, unless his employment was terminated by reason of death or retirement under circumstances entitling him to immediate receipt of retirement benefits. Haughton was entitled to take early retirement benefits and, thus, was entitled to a pro-rata mid-year bonus payment. Fitch, on the other hand, was not on the payroll as of December 31, 1984, nor was he entitled to immediate retirement benefits.

■ The Court finds that the defendant has articulated a non-discriminatory reason that Haughton, but not Fitch, was allowed to take early retirement, remain on the payroll until his retirement became effective, and to receive a pro-rata share of the sales bonus. Employees who are dissimilar need not be treated identically. *Shah v. General Electric Co.*, 816 F.2d 264 (6th Cir.1987). Thus, to survive the defendant's Motion for summary judgment, the plaintiff must provide admissible evidence that the defendant's articulated reason is a mere pretext for impermissible disparate

treatment. Other than to suggest that Haughton's termination could have been managed differently, plaintiff has failed to submit any evidence of pretext. Accordingly, the defendant's Motion for summary judgment on the disparate treatment due to race is granted, and plaintiff's Motion is denied.

Retaliatory Discrimination. To make out a *prima facie* case of retaliatory discrimination, the plaintiff must show that he engaged in protected activity and that it was known by the alleged retaliator; that adverse employment actions ensued; and, the plaintiff must establish a causal connection between the protected activity and the adverse employment action in order to establish a retaliatory motive. *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir.1980).

■ It is not disputed that plaintiff Fitch filed a charge of discrimination with the EEOC (later withdrawn voluntarily), that Perez and others at RJR were aware Fitch had filed the charge, and that he was involuntarily terminated from his employment ten months later. However, the plaintiff has failed to establish the requisite causal link between the protected activity and the adverse employment action. The fact that seven months after he filed and then withdrew the EEOC charge, Fitch received the lowest performance evaluation to date is insufficient to make out a *prima facie* case of retaliatory discrimination. Without proof of such a link, there can be no proof of discriminatory intent. Therefore, the defendant's Motion for summary judgment with respect to the allegations of impermissible retaliatory employment actions is granted.

Termination Based on Race. The plaintiff raises an inference of racial discrimination with respect to his involuntary termination. He claims to be a member of a protected class; that he performed his job satisfactorily; that he was terminated without justification; and, that RJR sought and eventually selected an applicant to fill his former position.

In response, the defendant articulated a legitimate, non-discriminatory reason for the involuntary termination. The defendant claims the termination resulted from the falsification by the plaintiff of sales call reports and RJR's mandatory policy of automatic and immediate termination for such a violation. The Court finds the articulated reason sufficient to rebut the plaintiff's *prima facie* case of discrimination.

■ The plaintiff, however, has raised an inference that the articulated reason is mere pretext for discrimination. In support of this position, the plaintiff relies on the finding of the Unemployment Insurance Administrative Law Judge that there was no evidence the records were falsified. While not dispositive, this finding and the subsequent affirmance by the Unemployment Insurance Appeals Board is admissible evidence. Fed.R.Civ.P. 56(e). The finding is to be given weight in accordance with the nature of the administrative proceeding, including the participation of the parties. *See University of Tennessee v. Elliott*, — U.S. ——, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986); *Ryan v. New York Telephone*, 62 N.Y.2d 494; 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984). Accordingly, there is a genuine issue of material fact for the trier-of-fact to resolve. The defendant's Motion for summary judgment with respect to the termination allegedly based on race is denied.

Counsel are directed to appear for a conference on January 4, 1988, at 2:00 p.m., U.S. District Courthouse, Room 619, Foley Square, New York.

SO ORDERED.