Stanley ALTMAN, Plaintiff,

v.

The PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Defendant.

No. 89 Civ. 8464 (DC).

United States District Court, S.D. New York.

March 9, 1995.

Davis & Eisenberg by Robert B. Davis, Herbert Eisenberg, New York City, for plaintiff.

Milton H. Pachter by Megan Lee, Kathleen M. Collins, New York City, for defendant.

## OPINION

CHIN, District Judge.

On October 13, 1994, following an eight-day trial in this employment discrimination and retaliation case, the jury returned a verdict in favor of defendant The Port Authority of New York and New Jersey (the "Port Authority") on the claims of discrimination and in favor of plaintiff Stanley Altman ("Altman") on the claims of retaliation. The jury awarded Altman $15,000 in damages for lost wages, and found that the Port Authority's retaliatory actions were wilful.

Before the Court are the Port Authority's motion for judgment as a matter of law or for a new trial on the issue of liability and Altman's cross-motion for additional damages, prejudgment interest, and attorneys' fees and costs.

### Summary of the Facts

Altman is a 69–year old man who was employed by the Port Authority from March 1980 through his retirement on June 6, 1992. Beginning in the mid–1980's, he unsuccessfully applied for a number of positions within the Port Authority.

In July 1987, Altman told his then-supervisor, John Davison, that he believed he was being denied promotions at the Port Authority because of his age.[1] In June 1988, Altman filed a charge of age discrimination with the United States Equal Employment Opportunity Commission (the "EEOC").[2]

Although Altman had received eight salary increases from the commencement of his employment in 1980 through 1987, he received no salary increases from 1988 through his

---

1. Although Davison denied ever having such a conversation, in view of the jury's verdict, at this juncture the conflict in the testimony must be resolved in favor of Altman.

2. Nelson Chanfrau, the manager responsible for denying Altman salary increases from 1988 through 1992, learned in June 1988 that Altman had filed a charge of discrimination. (Tr. 429–30, 436–37, 441).

retirement in 1992. Moreover, after he was placed in the Environmental Programs unit in 1990, he was given certain tasks to perform that were inappropriate for an employee at his level.

Altman commenced this action in 1987 alleging age discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (the "ADEA"). Although Altman initially alleged discrimination with respect to ten positions for which he had applied, the trial was limited to three positions and Altman's claim of retaliation. The jury found in favor of the Port Authority on the discrimination claims and in favor of Altman on his retaliation claim.

These motions followed.

## Discussion

### A. The Port Authority's Motion

A jury verdict is not to be set aside and judgment entered as a matter of law pursuant to Fed.R.Civ.P. 50(b) unless " 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [jurors] could have reached.' " *Samuels v. Air Transport Local 504,* 992 F.2d 12, 14 (2d Cir.1993) (*quoting Simblest v. Maynard,* 427 F.2d 1, 4 (2d Cir.1970)). In considering a Rule 50(b) motion, a trial court "must view the evidence in a light most favorable to the non-movant and grant that party every reasonable inference that the jury might have drawn in its favor." *Samuels,* 992 F.2d at 16. Judgment notwithstanding the verdict is to be entered only where there is such a "complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture." *Mattivi v. South African Marine Corp.,* 618 F.2d 163, 168 (2d Cir.1980); *accord Cruz v. Local Union No. 3,* 34 F.3d 1148, 1154 (2d Cir.1994).

A motion for a new trial pursuant to Fed.R.Civ.P. 59 may not be granted on the basis of the weight of the evidence unless the jury's verdict is "seriously erroneous." *Piesco v. Koch,* 12 F.3d 332, 344–45 (2d Cir.1993). A trial court may refrain from setting aside a verdict and ordering a new trial "[w]here the resolution of the issues depended on assessment of the credibility of the witnesses." *Metromedia Co. v. Fugazy,* 983 F.2d 350, 363 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993).

In this case, the Port Authority's attack on the sufficiency of the evidence is two-fold: First, it contends that the jury could not reasonably have found retaliation; it maintains that it presented "ample evidence" that Altman was denied pay increases because of his work performance and that Altman failed to refute this evidence. (Def.Mem. at 11–12). Second, it contends that there was insufficient evidence in the record to sustain the jury's award of $15,000 in lost wages. (Def.Mem. at 25–27).

Neither of the Port Authority's contentions has merit.[3]

### 1. The Evidence of Retaliation

To prevail on his claim that he was denied salary increases because he had protested what he believed to be age discrimination, Altman had to prove a causal connection between the adverse employment decisions and his protected activity. *Malarkey v. Texaco, Inc.,* 983 F.2d 1204, 1213 (2d Cir.1993). The record contains sufficient evidence to support the jury's finding that he did so.

In July 1987, Altman told Davison that he felt he was being discriminated against because of his age. (Tr. 90–91, 136). In June 1988, Altman filed his EEOC charge. (PX 68). Both of these actions constituted protected activity. *See, e.g., Kotcher v. Rosa & Sullivan Appliance Center,* 957 F.2d 59, 65 (2d Cir.1992) (employee's complaint of sexual harassment made to company management deemed protected activity). *See also* 29 U.S.C. § 623(d). The jury could have reasonably found, from evidence in the record,

---

**3.** Since I am denying the Port Authority's motion on the merits, I need not reach Altman's proce-

dural argument. (Pl.Mem. at 12).

that Altman was denied salary increases as a result of this protected activity.

Altman presented evidence to show that prior to his conversation with Davison in 1987 and the filing of his discrimination charge in 1988, he received eight salary increases in approximately seven years. (Tr. 134). After the conversation and EEOC filing, however, Altman received *no* salary increases in 1988, 1989, 1990 or 1991. (Tr. 134–35, 137).[4] The jury surely could have concluded from this sequence of events that there was a causal connection between the protected activity and the denial of pay raises. *See Malarkey v. Texaco, Inc.*, 983 F.2d at 1210 (evidence that an employee "moved up the professional ladder very rapidly" in years prior to her lodging charges of discrimination was relevant to jury's determination whether she "would have continued on the same upward trajectory" absent the employer's wrongful conduct).

Moreover, in 1988, Altman was one of only two of twenty managerial employees in Risk Management not to receive a salary increase. (Tr. 428–30). From 1989 forward, because of a reorganization, the number of managerial employees in Risk Management increased to approximately 100. In 1989, Altman was one of only one or two managerial employees not to receive a pay increase. In 1990, he was the only one not to get a raise. In 1991 and 1992, he was one of only one or two not to get a raise. (Tr. 428–31). Hence, although the record contained evidence of other managerial employees with purportedly poor performances, Altman was the *only* managerial employee not to receive *any* pay increase from 1988 through 1992. The jury surely could have concluded that this was the result, at least in part, of retaliation.

The refusal of the Port Authority to give Altman any salary increases for 1988 through his retirement in June 1992 (following eight increases in seven years) must be viewed in the context of evidence showing that during that same time period he was given demeaning tasks inappropriate for a junior managerial employee of his level. After his transfer into the environmental unit in 1990, Altman was assigned tasks such as sorting through garbage dumpsters for recyclable materials, lifting and moving bags of cans, lifting and moving boxes of toll receipts, and detaching the cardboard backing from several tons of toll receipts. (Tr. 149, 150–52, 165–67, 1016, 1111–13).[5] Nelson Chanfrau, the general manager of Risk Management, acknowledged that these were not appropriate tasks for an employee of Altman's level. (Tr. 474). Moreover, the record contains evidence that Altman's supervisors were making baseless or exaggerated complaints about him. For example, in 1988, Stephen Kay wrote a memorandum to the file complaining that Altman had worked on a day off. (PX 145). This evidence provided a context that supports the jury's finding that the denial of pay increases was punitive in nature.

■ The jury was also entitled to take into consideration the decision of the New Jersey Department of Labor awarding Altman benefits after he retired because he "was denied pay increase without explanation for five (5) years and was harassed by his supervisors." (PX 195). *See, e.g., Fitch v. R.J. Reynolds Tobacco Co.*, 675 F.Supp. 133, 138 (S.D.N.Y. 1987) (determination by unemployment insurance appeals board that plaintiff was terminated without cause admissible in subsequent employment discrimination action); *Barfield v. Orange County*, 911 F.2d 644 (11th Cir.1990), *cert. denied*, 500 U.S. 954, 111 S.Ct. 2263, 114 L.Ed.2d 715 (1991) (same); *Baldwin v. Rice*, 144 F.R.D. 102, 106 (E.D.Cal.1992) (same).

The Port Authority's contention that Altman failed to rebut its evidence of poor performance must be rejected, for Altman did present some evidence of satisfactory performance. Altman was rated acceptable for the

---

4. Altman did receive a raise in November 1987, after his conversation with Davison in July 1987. (PX 56). He testified, however, that the raise (which he did not receive until after the Davison conversation) was less than what he had been told (prior to the Davison conversation) that he would be receiving. (Tr. 112, 136).

5. Although another employee was also given the task of moving the boxes, Altman was the only employee asked to perform the task of stripping the toll receipt booklets of the cardboard backing. (Tr. 1011–17, 1047).

period July 2, 1990 through July 1, 1991. (PX 88).[6] Stephen Kay, Altman's supervisor in the Environmental Unit of Risk Management, also testified that Altman did a good job in performing plan review, tracking radiation dosimetry reports, and distributing sanitation and food protection posters. (Tr. 1034–36, 1042–43, 1039–40, 1050; *see also* 1044–45, 1056). Likewise, Russel Earle, a former co-worker, testified that in his experience Altman performed well at the Port Authority from 1989 through 1992. (Tr. 407–12).

On the basis of this evidence in the record, I find that the jury's finding of retaliation was not "the result of sheer surmise and conjecture," *Mattivi*, 618 F.2d at 168, and that its verdict was not "seriously erroneous." *Piesco*, 12 F.3d at 344–45. Moreover, there were conflicts in the testimony that required the jury to make credibility findings. Accordingly, the first prong of the Port Authority's motion for judgment as a matter of law or for a new trial is denied.

### 2. *Damages*

■ Likewise, the record contains sufficient evidence to support the jury's modest award of $15,000 in lost wages. The eight salary increases received by plaintiff prior to the retaliatory conduct resulted in an increase in plaintiff's salary from $23,504 at his date of hire to $39,104 as of June 28, 1987. (PX 12, 56). The increase of $15,600 over seven years averages to an annual increase of approximately $2,200—or an average annual increase of 7.47%.[7]

The parties differ as to how the jury reached its award of $15,000. Altman suggests that the jury reached that number by awarding him an increase of 3.85% in his

annual salary for each of the years commencing with his anniversary date (June 28th) in 1988, 1989 and 1990 and a lump sum award of approximately $1,000 in 1991. (Davis Aff. ¶ 4). The Port Authority posits a slightly different theory, suggesting that the jury awarded Altman a raise in his annual salary of $1,000 per year for each year from 1988 through 1992. (Lee Aff. ¶ 7).[8]

Under either theory, the jury's award is reasonable. Whether the jury determined that Altman received raises of 3.85% and a $1,000 lump sum in 1992 or that he received annual increases of $1,000, it acted reasonably and on the basis of evidence in the record—Altman's average annual increases of $2,200 or 7.47% in the seven years prior to the Port Authority's retaliatory actions.

The Port Authority also argues, as a technical matter, that Altman's merit increase form for 1987 showed that his then salary of $39,124 was only $500 below the maximum salary for someone of his grade level. (PX 56). Because Altman offered no proof that his maximum salary increased after 1987, the Port Authority contends that the jury could only have awarded one $500 salary increase in annual salary for the entire period from 1988 through 1992—or a total for the five years of $2500. Any award beyond that, the Port Authority asserts, is speculative. (Def.Mem. at 25–26).

The Port Authority's argument must be rejected. The jury could have reasonably concluded that the maximum salary for plaintiff's grade level increased after 1987. The evidence showed that for each year from 1988 through 1992 Altman was either the only or one of only two managerial employees in Risk Management not to receive a salary increase. (Tr. 429–31).[9] Hence, virtu-

---

**6.** Although Altman was not given a pay increase for that time period (PX 134–35, 163), he had been given pay increases for the periods from July 15, 1986 to March 30, 1986 and from July 1, 1986 through March 30, 1987 when he received the same acceptable rating. (Tr. 129, 131; PX 28, 47, 56). Of course, those two time periods were prior to Altman's complaints of discrimination.

**7.** This figure was calculated by computing the percentage that $2,200 would constitute of the

prior year's salary (assuming annual increases of $2,200).

**8.** Since plaintiff retired in June 1992, under the Port Authority's theory Altman would have received the $1,000 increase for 1992 in the first half of calendar year 1992.

**9.** This argument is belied by the Port Authority's contention that Altman was denied a lump sum payment in 1991 and merit increases in 1988 and 1992 not because he had reached the maxi-

ally all the managerial employees received salary increases each year. Moreover, as noted, Altman had received eight increases in the seven years prior to 1988. Finally, the Port Authority did not present evidence that Altman's 1987 salary range did not thereafter increase; if such evidence existed, the Port Authority surely would have presented it to the jury. On these facts, applying its common sense, the jury surely could have found that Altman's salary range increased to the extent necessary to permit the modest raises awarded. Hence, the second prong of the Port Authority's motion is denied as well.

### B. *Altman's Cross–Motion*

Altman cross-moves for additional damages, prejudgment interest, and attorneys' fees and costs.

### 1. *Additional Damages*

■ At trial, the parties stipulated that the jury would only be asked, in the event it found liability, to calculate lost wages. The parties agreed that the issue of the effect any lost wages award would have on Altman's retirement benefits would be an issue for the Court to resolve after trial. (Tr. 873–74, 976). Both sides have now submitted additional evidence on the impact of a $15,000 backpay award on Altman's retirement benefits, *i.e.*, the amount that would be necessary to compensate Altman for the reduction in his pension benefits caused by the loss of $15,000 in wages, projected through the expected balance of his life, discounted to present value.

Altman's calculations would result in an award of $25,346 as of December 31, 1994, with a per diem adjustment thereafter of $5.55. (Davis Aff. ¶¶ 4–6). The Port Authority's calculations would result in an award of $16,970 as of January 31, 1995. (Lee Aff. ¶¶ 7–9). The difference of some $9,000 is due primarily to two factors: (1) differences in assumptions as to when the salary increases should have been implemented and the amounts thereof and (2)

mum salary for his level but because of poor performance. (Def.Mem. at 7–8, 9–10).

**10.** Both actuaries used 8% to make the present value calculations.

Altman's actuary used interest rates of 6% and the Port Authority's actuary used interest rates of 3.12%, 3.54%, 4.64% and 6.21%.[10]

I will calculate the additional damages based on Altman's calculations, for three reasons. First, the Port Authority's assumptions do seem flawed, as they would result in pay increases totalling only $10,000, rather than the $15,000 awarded by the jury. (*See* Chosak report, at items 1 and 6 on pages 1 and 2, annexed to Lee Aff. as Exh. B). Second, the differences in interest rates utilized are minor, and I believe the rates used by Altman are more appropriate. Third, any uncertainty should be resolved in favor of Altman, for the Port Authority, having been adjudged guilty of unlawful retaliation, should not be allowed to benefit from any lack of precision. As Judge Weinfeld has held:

> where one's conduct has prevented a precise computation of damages, the injured party is not to be deprived of adequate damages. The trier of the fact may draw reasonable inferences from relevant facts, and all doubts are to be resolved in favor of the injured party; the wrongdoer does not become the beneficiary of his own wrongful conduct.

*EEOC v. Kallir, Philips, Ross, Inc.*, 420 F.Supp. 919, 923 (S.D.N.Y.1976), *aff'd mem.*, 559 F.2d 1203 (2d Cir.), *cert. denied*, 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977). *See also Malarkey v. Texaco, Inc.*, 794 F.Supp. 1237, 1243–44 (S.D.N.Y.1992), *aff'd*, 983 F.2d 1204 (2d Cir.1993).

■ Accordingly, I will award additional damages of $25,717.85, consisting of the $25,346 as of December 31, 1994 and $371.85 in per diem adjustments through today (67 days × $5.55 per day). To that amount is added the jury's award of $15,000 in lost wages, for a total damages award of $40,717.85. In view of the jury's finding of wilfulness, that amount will be doubled to $81,435.70. 29 U.S.C. § 626(b); *see Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 281 (2d Cir.1987).[11]

**11.** In his reply papers, plaintiff also asks relief with respect to life insurance benefits. (Davis Aff. ¶¶ 5–6). As the Port Authority points out, however, and as Altman concedes, the issue of

## 2. *Prejudgment Interest*

 Plaintiff seeks prejudgment interest on the damages awarded by the jury. The injuries for which the jury awarded Altman compensation were first sustained in 1988. As the Supreme Court has noted, money received today for services provided previously is not equivalent to the same dollar amount had it been received at the time the services were provided. *Missouri v. Jenkins*, 491 U.S. 274, 283, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989). For this reason, the Supreme Court has held that prejudgment interest is an element of complete compensation. *West Virginia v. United States*, 479 U.S. 305, 310, 107 S.Ct. 702, 706, 93 L.Ed.2d 639 (1987); *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655–56, 103 S.Ct. 2058, 2062–63, 76 L.Ed.2d 211 (1983). Indeed, the Second Circuit has observed that " 'it is ordinarily an abuse of discretion *not* to include

prejudgment interest in a back-pay award....' " *Clarke v. Frank*, 960 F.2d 1146, 1154 (2d Cir.1992) (*quoting Donovan v. Sovereign Security, Ltd.*, 726 F.2d 55, 58 (2d Cir.1984)). Thus, Altman is entitled to an award of prejudgment interest on the compensation he would have received but for the Port Authority's retaliatory conduct.

For the reasons set forth above in the discussion of Altman's additional damages, I will assume that the jury determined that, but for the retaliation, Altman would have received salary increases and a lump sum payment essentially as set forth in paragraph 4 of the Davis affidavit. For purposes of calculating prejudgment interest, I will assume further that the amounts in question would have been paid on the last day of the year in question. I have rounded off the numbers and calculated interest as follows:

| Received on: | | Per diem at 9% | × | No. Days to 3/8/95 | Total |
|---|---|---|---|---|---|
| 6/27/89 | $ 1,500 | $ .37 | | 2,079 | $ 769.23 |
| 6/27/90 | 3,100 | .76 | | 1,714 | 1,302.64 |
| 6/27/91 | 4,700 | 1.16 | | 1,349 | 1,564.84 |
| 6/6/92 | 5,700 | 1.41 | | 984 | 1,387.44 |
| Totals | $15,000 | | | | $5,024.15 |

Accordingly, I will allow prejudgment interest in the amount of $5,024.15.

## 3. *Attorneys' Fees and Costs*

The ADEA, incorporating the Fair Labor Standards Act, provides that "[t]he court ... shall, in addition to any judgment awarded the plaintiff or plaintiffs, ... allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action." 29 U.S.C. §§ 216(b), 626(b). The usual method for determining the amount of fees to be awarded a prevailing plaintiff in a civil rights case is to start by computing the "lodestar," the number of hours reasonably expended multiplied by a reasonable hourly rate, and to then make any appropriate adjustments. *Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989); *Hensley v.*

*Eckerhart*, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 433 n. 7, 76 L.Ed.2d 40 (1983); *Cowan v. Prudential Ins. Co. of Am.*, 935 F.2d 522, 524 (2d Cir.1991).

Davis & Eisenberg (the "Firm") seeks compensation for 275.33 hours expended by Robert B. Davis, Esq. at an hourly rate of $225 and for 79.5 hours expended by Herbert Eisenberg, Esq. at an hourly rate of $250 for a total fee award requested of $81,824.25.

 As an initial matter, I believe the requested amount is reasonable. The case was not a simple one, as it entailed five years of litigation that culminated in an eight-day jury trial. Although Altman initially appeared *pro se*, the Firm became involved in February 1991. Thereafter, the parties engaged in extensive discovery. Seven deposi-

life insurance benefits was not raised at trial, and no evidence was presented on that issue. Moreover, the parties' stipulation reserving the issue

of pension benefits for the Court to decide after trial did not include life insurance. (Tr. 873–74, 976). Hence, this application is denied.

tions were taken, and Altman was deposed for three days. A motion *in limine* was filed by the Port Authority prior to trial, legal issues arose during the trial, and motions were filed after trial. The amount of time expended by the Firm on the matters for which it now seeks compensation (354.83 hours) is reasonable.

Moreover, Altman's attorneys have achieved a substantial victory. Although the jury awarded only $30,000, with the additional damages I have awarded above, Altman's recovery will exceed $80,000. Moreover, the Second Circuit has specifically rejected the argument that a fee award should be proportional to the damages awarded in an employment discrimination case. In *Cowan v. Prudential Ins. Co. of America,* the Court held,

> [*City of Riverside v.] Rivera,* [477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986),] does not require proportionality. The approach taken in *DiFilippo [v. Morizio,* 759 F.2d 231 (2d Cir.1985),] is the correct one to, the extent that we reject a reduction of the reasonable 'lodestar' fee simply because the damage award was low. Other circuits that have considered this issue after *Rivera* generally agree.

935 F.2d at 527 (citations omitted). In *Rivera,* the Supreme Court approved an attorneys' fee of approximately $250,000 even though the total damages award amounted to less than $34,000. 477 U.S. at 564–65, 106 S.Ct. at 2689–90.

The Port Authority makes three specific objections to the fees requested by Altman. First, the Port Authority contends that the requested hourly rates of $225 for Davis and $250 for Eisenberg are excessive, noting that the Second Circuit recently affirmed the use of hourly rates of $150 and $175 for Davis and Eisenberg, respectively. *See Cruz v. Local Union No. 3,* 34 F.3d 1148, 1160 (2d Cir.1994). Second, the Port Authority argues that the fees should be further reduced to account for Altman's lack of success on his discrimination claims. In particular, the Port Authority notes that Altman litigated ten positions prior to trial, abandoning seven of the positions before losing on the remaining three at trial. Third, the Port Authority maintains that all of the hours expended by Eisenberg should be eliminated, arguing that his presence at trial was not needed.

■ A reasonable hourly rate is one that is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed reasonable." *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984).[12] Altman has submitted affidavits from three attorneys with substantial experience in employment discrimination cases who attest to the fact that the requested hourly rates of $225 and $250 for Davis and Eisenberg, respectively, are well within the range of rates charged for similar services by lawyers who practice in the metropolitan area, *i.e.,* $175 to $375 per hour.

■ In view of their experience and qualifications, and based on my observation of the quality of their oral and written presentations, I find the requested rates of $225 per hour for Davis and $250 per hour for Eisenberg to be reasonable. *See, e.g., Ragin v. Harry Macklowe Real Estate Co.,* 870 F.Supp. 510 (S.D.N.Y.1994) (in housing discrimination case, hourly rates of $275 and $300 for lead counsel); *Davis v. City of New Rochelle,* 156 F.R.D. 549 (S.D.N.Y.1994) (in voting rights case, hourly rate of $300 for lead counsel); *Williams v. Secretary of Navy,* 853 F.Supp. 66 (E.D.N.Y.1994) (in employment discrimination case, hourly rate of $275 for partner); *Caruso v. Peat, Marwick, Mitchell & Co.,* 779 F.Supp. 332 (S.D.N.Y. 1991) (in employment discrimination case, hourly rates of $175 to $300 for partners); *Pierce v. F.R. Tripler & Co.,* 770 F.Supp. 118 (S.D.N.Y.1991) (in employment discrimination case, hourly rates of $200 to $300 for partners), *aff'd in relevant part and rev'd in part,* 955 F.2d 820 (2d Cir.1992).

---

12. To compensate for the fact that payment is to be made at the end of litigation rather than at the time the services are rendered, it is appropriate to apply counsel's current hourly rate to time expended throughout the litigation. *Missouri v. Jenkins,* 491 U.S. 274, 283–84, 109 S.Ct. 2463, 2469–70, 105 L.Ed.2d 229 (1989).

Although hourly rates of $150 and $175 were applied by the trial court for Davis and Eisenberg in *Cruz*, that case involved a claim brought by union members against their union for breach of its duty of fair representation. Traditionally, lawyers representing unions and union members have charged below-market rates. Moreover, the Second Circuit in *Cruz* simply held that the trial judge did not abuse his discretion in awarding rates of $150 and $175. Finally, it is worth noting that the trial judge decided the fee application in the context of a recovery of only nominal damages of $1. 34 F.3d at 1150.

The Port Authority's assertion that the number of hours should be reduced further because Altman did not prevail on his discrimination claims is also rejected. The Firm has eliminated—and is not seeking compensation for—some 119 hours of Davis's time expended solely on the unsuccessful prosecution of Altman's discrimination claims. (Davis Aff. ¶ 12). The firm also has eliminated more than 20 hours of an associate's time.

Altman's lack of success on his age discrimination claim should not result in any further reduction of the requested fee. *See Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940; *Rivera,* 477 U.S. at 571, 106 S.Ct. at 2692. In *Hensley,* the Court held that in cases involving "a common core of facts" or related legal theories, counsel's time will be "devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." 461 U.S. at 435, 103 S.Ct. at 1940. The Court held that in such a case, where a plaintiff has obtained excellent results, his or her attorney should be fully compensated. The Court observed:

In these circumstances, the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants may in good faith raise alternative grounds for a desired out come, and the court's *rejection of or failure to reach certain grounds is not sufficient reason for reducing a fee.*

461 U.S. at 435, 103 S.Ct. at 1940 (citations omitted) (emphasis added).

The Second Circuit has already considered the application of this rule to cases such as the present one, in which a plaintiff in an employment discrimination case prevails on a retaliation claim, but does not prevail on the underlying discrimination claim. *See Dominic v. Consolidated Edison Co.,* 822 F.2d 1249, 1260 (2d Cir.1987). In *Dominic,* the Second Circuit affirmed an attorneys' fees award for a plaintiff who prevailed on a retaliation claim, including fees attributable to the underlying age discrimination claim on which plaintiff did not prevail. The Court reasoned:

[A]lthough the merits of Dominic's retaliation claim did not depend on the validity of his complaints of age discrimination, *see Davis [v. State Univ. of New York],* 802 F.2d [638] at 642 [2d Cir.1986], there is authority that Dominic could recover on his retaliation claim only if his complaints of age discrimination had a reasonable foundation.

Similarly, in *Caruso,* Judge Patterson awarded the full attorneys' fee requested by a plaintiff who prevailed on his retaliation claim, but not on the underlying age discrimination claim. 779 F.Supp. at 334–35.[13]

Here, much of the evidence was intertwined. The evidence relating to the discrimination claims was helpful as background and it was essential to show a reasonable basis for the complaints of age discrimination. Moreover, the fact that Altman chose to reduce the number of positions in issue at trial from ten to three is no basis for any further reduction, since he did so to narrow the issues for trial.

Finally, the Port Authority's argument that Altman should not be reimbursed for the participation of two attorneys is also rejected. As Judge Tenney has held,

The use of multiple attorneys ... is not unreasonable per se. Indeed, division of responsibility may make it necessary for more than one attorney to attend activities such as depositions and hearings. Multiple attorneys may be essential for planning

---

**13.** Plaintiff's counsel in *Caruso* voluntarily reduced the hours for which it was seeking compensation by 10% for two years to account for the lack of success on the discrimination claim.

strategy, eliciting testimony or evaluating facts or law.

*Williamsburg Fair Hous. Comm. v. Ross–Rodney Hous. Corp.,* 599 F.Supp. 509, 518 (S.D.N.Y.1984) (citations omitted). *Accord New York Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1146 (2d Cir.1983) ("prevailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist") (citation omitted).[14]

Altman also seeks costs of $3,601.07.[15] The Port Authority has not objected to any aspect of the requested costs, and in any event I find that they are reasonable.

### *Conclusion*

The Port Authority's motion for judgment as a matter of law or for a new trial on the issue of liability is denied. Altman's cross-motion for additional damages, prejudgment interest and attorneys' fees and costs is granted.

Accordingly, judgment will be entered (1) in favor of defendant dismissing plaintiff's claims of discrimination and (2) in favor of plaintiff on his claims of wilful retaliation and awarding him (a) damages of $40,717.85, (b) liquidated damages of $40,717.85, (c) prejudgment interest of $5,024.15, (d) attorneys' fees of $81,824.25 and (e) costs of $3,601.07, for a total award of $171,885.17.

SO ORDERED.

---

**14.** One court has found that the "presence of more than one attorney at a deposition or trial enhances efficiency," *Howes v. Medical Components, Inc.,* 761 F.Supp. 1193, 1199 (E.D.Pa. 1990), and another has acknowledged that "[u]se of more than one lawyer is common in legal practice. Consultation among lawyers ensures that they do not overlook significant facts or inquiries.... Two lawyers are the minimum in much private litigation." *Bohen v. City of East Chicago,* 666 F.Supp. 154, 157 (N.D.Ind.1987).

**15.** All but $87.68 of this amount was requested by Altman in his initial moving papers. The additional $87.68 was requested by Altman for photocopying reply papers.