**Charles STEVENS, Plaintiff,**

v.

**METROPOLITAN TRANSPORTATION AUTHORITY POLICE DEPARTMENT, Police Officer John Doe, individually and as a member of MTA Police Department, and other unknown "John Doe" and "Jane Doe" police officers individually and as members of the MTA Police Department, Defendants.**

**No. 00 CIV. 3445(DC).**

United States District Court, S.D. New York.

Dec. 3, 2003.

---

Law Offices of Thomas F. Liotti, Garden City, NY by Michael D. Elbert, for plaintiff.

Lester, Schwab, Katz & Dwyer, LLP, New York City by Thomas A. Catalano, for Defendant Metropolitan Transportation Authority.

### MEMORANDUM DECISION

CHIN, District Judge.

On April 6, 1999, plaintiff Charles Stevens boarded a Long Island Rail Road train at Penn Station. He was wearing army fatigues and a mask, and was carrying a wooden staff and a military sword. A conductor asked him if he had a ticket. He responded by shaking his head and moving toward the back of the train. Police officers approached and asked him to drop the staff and leave the train. He refused. The officers sprayed him with pepper spray, to no avail. Stevens unsheathed the sword and lunged at the officers, swinging the three-foot weapon at them. One of the officers fired his weapon, shooting Stevens in the arm. Stevens still did not drop the sword. Instead, he continued to attack the officers. They fired again, shooting him seven more times before he finally fell to the ground. Stevens was arrested and criminal charges were filed against him. Eventually, he pled guilty to criminal possession of a weapon.

In this civil rights case, Stevens sues for money damages, claiming that the Metropolitan Transportation Authority (the "MTA") and its police officers violated his constitutional rights by the use of excessive force. Stevens asserts claims under 42 U.S.C §§ 1983 and 1988, the First, Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution, and state law. The MTA—the only defendant to be named and served with process in this case—moves for summary judgment dismissing all claims.

The motion is granted. As discussed below, a reasonable jury could only conclude that the police officers acted reasonably and were justified in using deadly force in defense of themselves and others. Indeed, the officers were confronted by an obviously unstable person dressed in combat garb who was brandishing dangerous weapons on a commuter train. They resorted to shooting him only after he attacked them with the sword, and after their efforts to talk to him and to contain him with pepper spray had failed.

Moreover, even assuming a reasonable jury could find that the officers used excessive force, the MTA—a municipal agency—cannot be held liable for the officers' actions because Stevens has presented no evidence to show that any violation of his constitutional rights was the result of a municipal policy or custom.

Accordingly, the complaint is dismissed in its entirety.

### STATEMENT OF THE CASE

#### I. The Facts

The facts are largely undisputed. They are as follows:

On April 6, 1999, Stevens, a diagnosed paranoid schizophrenic who had failed to take his prescribed anti-psychotic medication for at least two years (Dep. at 26–29),[1] boarded a Long Island Railroad ("LIRR") train at Penn Station dressed in army fatigues, wearing a mask over his nose, and carrying a wooden staff and a military sword. (*Id.* at 41–42, 50–52). The sword had a three-foot blade with a sharp edge and "extra sharp point," and Stevens had used it in the past to cut plants, flowers, and similar items. (*Id.* at 49–51).

Stevens attracted the attention of a conductor on the train. The conductor asked Stevens if he had a ticket, but Stevens shook his head and walked toward the back of the train. (*Id.* at 67). The conductor alerted an MTA police officer who approached Stevens in the next to last car of the train.[2] The officer repeatedly directed Stevens to put down the staff and leave the train. (Statement of Police Officer Marilyn Armstrong, at Def.'s Notice of Mot. for Summ. J. Ex. G) ("Armstrong Statement"). When he refused to comply, she placed her hand on his shoulder and attempted to direct him off the train. (*Id.*). Stevens knocked her hand away. The officer then sprayed him with pepper spray, but the spray had no apparent effect. (*Id.*).

Stevens continued into the last car. Another MTA officer approached and ordered him to drop the staff and leave the train. (Statement of Police Officer Michael Yasso at Def.'s Notice of Mot. for Summ. J. Ex. G). Again he refused. Instead, he assumed an aggressive stance with the staff still in his hands. (*Id.*). Four officers were now at the scene. They sprayed him

with pepper spray again, still to no avail. (*Id.;* Dep. at 88–90).

Stevens then unsheathed the sword and brandished the three-foot long weapon. (Armstrong Statement). The officers sprayed him again and ordered him to drop the sword. (*Id.*). Stevens responded by lunging at the officers and swinging the sword at them. (Dep. at 89–90). He missed and struck a part of the car. (*Id.* at 91).

One of the officers fired one round, hitting Stevens in the arm. (Statement of Lieutenant Zaino, at Def.'s Notice of Mot. for Summ. J. Ex. G). Still he continued at them, with the sword in his hand. (*Id.*). Other officers then fired as well. (Armstrong Statement). Stevens finally fell to the ground, having been shot a total of eight times, four times in the arm. (*See* New York City Police Department Crime Scene Unit Report, at Def.'s Notice of Mot. for Summ. J. Ex. G).

The MTA investigated the incident and took statements from 39 witnesses (26 civilian witnesses, 3 LIRR employees, 6 off-duty New York City police officers, and 4 MTA police officers). These statements, which are consistent with the coherent portions of Stevens's deposition testimony, uniformly indicate that the police officers shot Stevens only as a last resort. Indeed, many of the civilian witnessed praised the police officers for the professionalism they exhibited during the incident. (*See, e.g.,* Statement of Mary Persson, at Def.'s Notice of Mot. for Summ. J. Ex. G).

## II. *Procedural History*

### A. *The Criminal Proceedings*

Stevens was charged with four counts of First Degree Attempted Assault, one

---

**1.** References to "Dep." are to pages of the Stevens deposition transcript.

**2.** Stevens's recollection is somewhat different in its description of the details of the incident.

Much of the deposition, however, is not coherent. Moreover, he conceded the critical facts as to his appearance and conduct and the police officers' response.

count of Third Degree Criminal Possession of a Weapon, and one count of Second Degree Reckless Endangerment. In June 1999 Stevens was found to lack the capacity to understand the proceedings against him or to assist in his defense. He was hospitalized for his psychiatric condition.

In December 2001, after he was determined to be mentally competent, Stevens pled guilty to the charge of Criminal Possession of a Weapon in the Third Degree. He was sentenced to five years of probation and required to attend an in-house psychiatric program.

No criminal charges were filed against any of the police officers involved in the shooting.

### B. *The Instant Action*

Stevens commenced this action pursuant to 42 U.S.C. § 1983 against the MTA and "John Doe" and "Jane Doe" police officers on May 5, 2000. The complaint asserts three causes of action. The first cause of action alleges that the police officers violated Stevens's constitutional rights. The second cause of action alleges that the MTA is liable for the actions of its police officers. The third cause of action apparently purports to assert state law clams, apparently against the MTA, alleging that "the conduct of the defendant is so outrageous, unfair and discriminatory that it should be punished and penalized for its gross misconduct." (Compl.¶ 31). The MTA was served with process and it filed an answer denying liability.

Because of the pending criminal charges and Stevens's mental state, this action was stayed. After Stevens pled guilty, discovery was further stayed because the MTA's insurance carrier went into liquidation. Discovery resumed in January 2003, but Stevens took no discovery during the entire case. He never sought leave to amend the complaint to add the names of the individual police officers even after their identities were known, and never served the individual officers.

At the close of discovery, the MTA moved for summary judgment on the grounds that (1) the MTA was not liable because the actions of the police officers were objectively reasonable and subject to a qualified privilege, (2) Stevens could not show injury as a result of an MTA policy or custom, (3) Stevens's claim of unlawful arrest was barred because he had pled guilty to one of the crimes charged, and (4) Stevens's state law claims were barred because he had not filed a notice of claim. Stevens submitted an affirmation from one of his attorneys in opposition to the summary judgment motion, but his attorneys did not submit a separate memorandum of law. Nor did Stevens submit a statement of the material facts as to which he contended a genuine issue of fact existed for trial, as required by Local Civil Rule 56.1(b). The only evidence submitted by Stevens was the transcript of his deposition, which had been taken by counsel for the MTA.

### DISCUSSION

### I. *Applicable Law*

### A. *Summary Judgment*

Summary judgment will be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, the Court's task is not to "weigh the evidence and determine the truth of the matter but [to] determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986). Summary judgment is inappropriate if, resolving all ambiguities and drawing all inferences against the moving party, there exists a dispute about a material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* 477 U.S. at 248, 106 S.Ct. 2505; *see Bay v. Times Mirror Magazines, Inc.,* 936 F.2d 112, 116 (2d Cir.1991).

To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. The nonmoving party "must present concrete particulars and cannot succeed with purely conclusory allegations." *Fitch v. R.J. Reynolds Tobacco Co.,* 675 F.Supp. 133, 136 (S.D.N.Y.1987) (citation omitted). There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

As the Court held in *Anderson,* "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted). The party opposing summary judgment must provide the Court with some basis to believe that his "version of relevant events is not fanciful." *Christian Dior–New York, Inc. v. Koret, Inc.,* 792 F.2d 34, 38 (2d Cir.1986).

## B. *Section 1983 Liability for Excessive Force*

■ Stevens's claim that the police officers used excessive force to effect his arrest is analyzed under the Fourth Amendment's prohibition against unreasonable seizures of the person. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Whether the amount of force used to effect an arrest was rea-

sonable is determined by an analysis of the facts and circumstances of the incident from the perspective of a "reasonable officer on the scene." *Id.* at 396, 109 S.Ct. 1865.

■ In certain circumstances, deadly force—"violent action known to create a substantial risk of causing death or serious bodily harm," Black's Law Dictionary 656 (7th ed.1999)—is reasonable. Under federal law, a police officer is authorized to use deadly force "if the suspect threatens the officer with a weapon" or "poses a threat of serious physical harm, either to the officer or to others." *Tennessee v. Garner,* 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Under New York law, a police officer may use deadly force if the officer "reasonably believes that such other person is using or about to use deadly physical force." N.Y. Penal Law § 35.15(2)(a)(ii) (McKinney 1998). In the course of effecting an arrest, a police officer may use deadly force if "necessary to defend the police officer or peace officer or another person from what the officer reasonably believes to be the use or imminent use of deadly physical force." N.Y. Penal Law § 35.30(1)(c) (McKinney 1998).

## C. *Monell Liability*

Even assuming unreasonable force is used, the MTA cannot be held liable under Section 1983 for the acts of its police officers on the grounds of respondeat superior. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, the MTA is liable only if the use of unreasonable force by its police officers was the result of a policy or custom of the MTA. *Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir.1996). Additionally, Stevens must demonstrate "a direct causal link between [the MTA] policy or custom, and the alleged constitutional deprivation." *City of Canton v. Harris,*

489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

## II. *Application*

I conclude that no genuine issue of material fact exists for trial and that the MTA is entitled to judgment as a matter of law. Hence, the motion for summary judgment is granted.

### A. *The MTA is the Sole Defendant*

As a preliminary matter, I note that the police officers denominated as "John Doe" and "Jane Doe" defendants in the caption of Stevens's complaint have never been identified in a pleading or served with process. (Def. Mem. at 1). The three-year statute of limitations applicable to Stevens's claims against these individual officers has expired. *Okure v. Owens*, 816 F.2d 45, 49 (2d Cir.1987)(holding that three years is the appropriate statute of limitations for Section 1983 claims filed in New York). In his opposition to the motion, Stevens does not dispute that time has run out on these claims and makes no argument for an exception. Therefore, the claims against the individual police officers are time barred. The only remaining issue is the MTA's liability.

### B. *The Officers Did Not Use Excessive Force*

█ I hold, on the record before the Court, that a reasonable jury could only conclude that the police officers did not use excessive force. Stevens was on a crowded commuter train when his unusual appearance and open possession of two dangerous weapons compelled a conductor to seek assistance. The first police officer to respond confronted him in a firm but perfectly appropriate manner. Stevens refused to comply with that officer's repeated instructions, and he continued to disregard the orders of the additional officers who arrived on the scene. In response to Stevens's refusal to comply, the officers used pepper spray in an effort to disarm him and remove him from the train. The police officers used their guns only after the pepper spray appeared to have no effect, and only after Stevens swung his sword and lunged at them in a threatening manner.

The placement of Stevens's gunshot wounds, especially the four wounds to his arm, suggest that, if anything, the officers made every effort to spare Stevens's life even as they used deadly force against him. The witnesses to the incident uniformly stated that the officers shot Stevens only as a last resort.

Given the sequence of events leading to the shooting, the close confines of the train, and the presence nearby of other passengers, no reasonable juror could fail to credit the officers' reasonable belief that Stevens posed an imminent risk to the lives of the police officers and others when they opened fire. Because the force used clearly was not excessive in light of the circumstances, there is no basis for holding the MTA liable. Accordingly, summary judgment is granted as to the Section 1983 claims against the MTA.

### C. *There is No Evidence that the MTA Police Were Inadequately Trained or Supervised*

█ Even assuming a reasonable jury could find that the officers used excessive force, Stevens has presented no basis for imposing liability against the MTA under *Monell.* Stevens alleges that the violation of his constitutional rights resulted from the MTA's failure to train and supervise its police officers. Although the claims arise from a single incident, Stevens argues that the involvement of multiple officers collectively establishes a lack of training and proper supervision. This ar-

gument, however, is not supported by any evidence in the record.

The Second Circuit has made it clear that a municipality is liable for failing to train or supervise its employees only if the failure "constitutes deliberate indifference to the constitutional rights of citizens." *Walker v. City of New York,* 974 F.2d 293, 297 (2d Cir.1992). Three requirements must be met to show such deliberate indifference. First, Stevens must show that an MTA policymaker knew "to a moral certainty" that MTA police officers would encounter a situation like the incident involving Stevens. *Id.* at 297. Second, he must show "that the situation either presents the employee with a difficult choice of the sort that training or supervision would make less difficult or that there is a history of employees mishandling the situation." *Id.* "Finally, [Stevens] must show that the wrong choice by the [MTA] employee will frequently cause the deprivation of a citizen's rights." *Id.* at 298.

■ Although Stevens has not presented any evidence to satisfy any of the three prongs delineated in *Walker,* of course, the Court can take judicial notice of the fact that MTA police officers are likely to encounter deranged or unstable individuals on the LIRR. Indeed, in December 1993 a gunman killed six people and wounded nineteen on an LIRR commuter train and in July 1986 a mentally deranged man killed two people and wounded nine others with a sword on a Staten Island ferry boat. *See* Peter Bowles et al., *LIRR Shooting,* Newsday, April 7, 1999, *available at* 1999 WL 8165813.

What Stevens fails to offer, except by way of conclusory assertions and speculation, is any evidence that in 1999 the MTA had failed to train its officers in the handling of mentally unstable individuals. Indeed, Stevens did not produce anything in response to interrogatories from the MTA requesting any documents supporting the claims of improper training and supervision. (Def.'s Notice of Mot. for Summ. J. Ex. D). Furthermore, there is no deposition testimony to support the claims against the MTA because Stevens did not retain any expert witnesses and never made any effort to depose police or civilian fact witnesses.

Because discovery has yielded no evidence to support the allegation, no reasonable juror could find that the MTA improperly trained or supervised its police officers. If anything, the circumstances of the nonfatal shooting suggest the opposite. Thus, even if Stevens could somehow show that he was the victim of excessive force, summary judgment in favor of the MTA would still be appropriate.

### D. *The State Claims*

■ Finally, the third cause of action apparently purports to assert state claims against the MTA. These claims are dismissed on the merits. The third cause of action does not specifically articulate any state law claim. To the extent Stevens alleges that the MTA engaged in "outrageous, unfair and discriminatory" conduct (Compl.¶ 31), that claim fails as a matter of law for Stevens has presented no evidence from which a reasonable jury could find such conduct. To the extent Stevens asserts claims for malicious prosecution, false imprisonment, and abuse of process, those claims are foreclosed by Stevens's guilty plea to one of the crimes charged and the absence of any evidence of malice or an intent to violate his rights. *See, e.g., Roesch v. Otarola,* 980 F.2d 850, 852 (2d Cir.1992)(holding that any unfavorable disposition of a criminal charge precludes a claim for malicious prosecution). On the record before the Court, no reasonable jury could find in favor of Stevens on any state law claim because the MTA and its

police officers acted reasonably as a matter of law.

### CONCLUSION

The MTA's motion for summary judgment is granted as to all claims. The complaint is dismissed with prejudice as to all defendants. The Clerk of the Court shall enter judgment accordingly.

SO ORDERED.